# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

***Electronically Filed***

| | |
|---|---|
| VINCENT DIRUSSO, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) **CIVIL ACTION NO.  3:08cv-187-H** ) |
| vs. | ) ) |
| HUMANA INC.<br>500 West Main Street<br>Louisville, Kentucky 40202 | ) **CLASS ACTION COMPLAINT** ) ) ) |
| SERVE:  CSC- Lawyers Incorporating Service Company<br>421 West Main Street<br>Frankfort, Kentucky 40601 | ) JURY TRIAL DEMANDED ) ) ) ) |
| MICHAEL B. McCALLISTER,<br>in his capacity as Humana, Inc.'s President and Chief Executive Officer,<br>500 West Main Street<br>Louisville, Kentucky 40202 | ) ) ) ) ) ) |
| SERVE:  Humana, Inc.<br>Attn:  Michael B. McCallister, Pres., CEO<br>500 West Main Street<br>Louisville, Kentucky 40202 | ) ) ) ) ) |
| and | ) ) |
| JAMES H. BLOEM,<br>In his capacity as Humana, Inc.'s Chief Financial Officer and Senior Vice President,<br>500 West Main Street<br>Louisville, Kentucky 40202 | ) ) ) ) ) ) |
| SERVE:  Humana, Inc.<br>Attn:  James H. Bloem, CFO, VP<br>500 West Main Street<br>Louisville, Kentucky 40202 | ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff, Vincent DiRusso ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Humana Inc. ("Humana" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal class action on behalf of purchasers of Humana's securities between February 4, 2008 and March 11, 2008 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Humana is a health and supplemental benefits company, with approximately 11.5 million medical members. Humana is a full-service benefits solutions company, offering health and supplementary benefit plans for employer groups, government programs and individuals.

3. On March 12, 2008, the Company shocked investors when it announced that it was revising the earnings guidance that it had issued a month earlier.  The Company stated that its first quarter 2008 EPS was now expected to be $0.44 to $0.46, as compared to the previous guidance of $0.80 to $0.85 per share.   Moreover, the Company stated that it expected EPS for full year 2008 to be $4.00 to $4.25 per share, as compared to the previous guidance of $5.35 to $5.55 per share.  The Company attributed these revisions to an analysis of pharmacy claims through February 2008, stating that there were higher than expected volumes for stand-alone

Prescription Drug Plans.

4.      Upon the release of this news, the Company's shares declined $6.50 per share, or 13.72 percent, to close on March 12, 2008 at $40.88 per share, on unusually heavy trading volume.

5.      The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being and prospects. Specifically, defendants failed to disclose or indicate the following: (1) that the Company's prescription drug plan costs had increased significantly; (2) that the Company was unable to accurately calculate the prescription drug costs of new members; and (3) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

6.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading

information, occurred in substantial part in this Judicial District.   Additionally, Humana's principal executive offices are located within this Judicial District.

10.   In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

11.   Plaintiff, Vincent DiRusso, as set forth in the accompanying certification, incorporated by reference herein, purchased Humana's securities at artificially inflated prices during the Class Period and has been damaged thereby.

12.   Defendant Humana is a Delaware corporation with its principal executive offices located at 500 West Main Street, Louisville, Kentucky.

13.   Defendant Michael B. McCallister ("McCallister") was, at all relevant times, the Company's President and Chief Executive Officer ("CEO").

14.   Defendant James H. Bloem ("Bloem") was, at all relevant times, the Company's Chief Financial Officer ("CFO") and Senior Vice President.

15.   Defendants McCallister and Bloem are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Humana's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be

corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Humana is a health and supplemental benefits company, with approximately 11.5 million medical members. Humana is a full-service benefits solutions company, offering health and supplementary benefit plans for employer groups, government programs and individuals.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on February 4, 2008.  On this day, the Company issued a press release entitled "Humana Reports Fourth Quarter and Full Year 2007 Financial Results." Therein, the Company, in relevant part, stated:

> Humana Inc. (NYSE: HUM) today reported financial results for the quarter ended December 31, 2007 (4Q07) including diluted earnings per common share (EPS) of $1.43, significantly above the company's previous guidance for 4Q07 EPS of $1.27 to $1.32 primarily due to a lower income tax rate for 2007 than previously anticipated and a gain from the sale of a venture capital investment during 4Q07. The company earned $0.92 per share for the quarter ended December 31, 2006 (4Q06).
>
> For the year ended December 31, 2007 (FY07), the company reported EPS of $4.91(a)(b) versus $2.90 for the year ended December 31, 2006 (FY06). The company's FY07 EPS included earnings of $0.25 per share(a) that are not anticipated to recur in future periods.

> *The company has raised its EPS projection for the year ending December 31, 2008 (FY08E) to reflect a lower tax rate than previously anticipated, with EPS now expected to be in the range of $5.35 to $5.55, an increase of 9 to 13 percent over FY07 EPS, or 15 to 19 percent(a)(b) versus the non-GAAP EPS for FY07.*

> "Our 2007 results show that Humana's unique value proposition resonates deeply with America's seniors," said Michael B. McCallister, the company's president and chief executive officer. "Treating members as actively engaged health-care consumers instead of passive health-care users is what we do across all our lines of business, and accounts for Humana's across-the-board growth and success." [Emphasis added.]

18.    That same day, the Company conducted a conference call with analysts and investors.   During the call, the following was revealed:

> [McCallister]: As Jim Bloem will explain, we anticipate $0.05 per share additional 2008 benefit due to the lower 2007 effective tax rate. Accordingly *this morning we raised our 200[8] earnings per share guidance to a range of $5.35 to $5.55, with continued membership growth and strong operational execution driving these results.*

> *              *              *

> *We believe the 2007 achievements just described position us well for 2008, both in terms of the existing environment and future trends.*

> *              *              *

> [Bloem]: *The primary factor driving this less-pronounced pattern is the composition of our 2008 PDP membership, which has changed from last year.* We have nearly 300,000 fewer low-income senior members effective January 1, with a higher percentage of non-low-income seniors in our Enhanced plan and a lower percentage of non-low-income senior members in the Complete plan. The decline in the percentage of low-income members is particularly relevant in analyzing the quarterly patterns, because these seniors have a steeper declining slope to their quarterly benefits ratio progression versus the remaining Part D members, with the first quarter ratio much higher on low incomes than the overall average and the fourth quarter much lower. Consequently, our lower membership in the low-income block is anticipated to lower the quarterly benefits ratio pattern in

the first half of the year and raise it slightly in the back half of the year compared to 2007.

\* \* \*

*So here is the twofold take away. The composition of our PDP membership will have a significant impact on the quarterly pattern of our Medicare benefits ratio without necessarily impacting the full year ratio. And then secondly, the 2008 quarterly Medicare benefits ratio pattern is expected to drive our quarterly earnings per share for this year.*

\* \* \*

Finally, also as expected, prescription drug trends were in the mid to high single digits. *Based on our ongoing deep-dive analysis of benefit expense trend factors, we do not foresee any significant changes to the components of our cost trends as we move into 2008, as is stated in this morning's press release. So accordingly, we remain confident of our ability to meet our 2008 Commercial pretax earnings target of $280 million to $300 million and we look forward to sharing our progress with you each quarter.* [Emphasis added.]

19.     The statements contained in ¶¶ 17-18 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company's prescription drug plan costs had increased significantly; (2) that the Company was unable to accurately calculate the prescription drug costs of new members; and (3) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

## The Truth Begins to Emerge

20.     On March 12, 2008, before the market opened, the Company shocked investors when it issued a press release entitled, "Humana Revises Earnings Guidance."  Therein, the Company, in relevant part, stated:

*Humana Inc. (NYSE: HUM) today announced that the company has revised its guidance for diluted earnings per common share*

7

*(EPS) for the first quarter of 2008 (1Q08) and for the year ending December 31, 2008 (FY08). The revised guidance is the result of updated projections for the company's FY08 stand-alone PDP financial performance.* The company's Medicare Advantage, Commercial and Military services businesses are not affected by this revision in earnings guidance.

*Humana now anticipates EPS for 1Q08 in the range of $0.44 to $0.46 versus its previous guidance of $0.80 to $0.85 with EPS for FY08 now projected to be in the range of $4.00 to $4.25 compared to previous guidance of $5.35 to $5.55.*

The company's revised projections for its stand-alone PDPs' financial performance are based upon analysis of pharmacy claims through February 2008. *Higher-than-anticipated claims volumes for the stand-alone PDPs year to date are reflective of a combination of factors including:*

- *Enhanced Plan actuarial assumptions versus experience,*

- *Enhanced Plan new member experience, and*

- *Standard Plan member mix.* [Emphasis added.]

21.     That same day, *Bloomberg* published an article entitled "Humana, Following WellPoint, Cuts Earnings Forecast."  Therein, the article, in relevant part, stated the following:

> Humana Inc., the second-largest seller of Medicare drug plans, followed rival WellPoint Inc. in cutting its 2008 forecast as prescription costs jumped. Humana fell 14 percent, and the selloff of other insurers continued.
>
> *Humana said expenses soared when it lowered how much patients pay for medicines in a bid to lure new customers age 65 and older into its Medicare prescription plans.* Humana is racing to grab market share from UnitedHealth Group Inc., the largest seller of the U.S.-backed drug plans, analysts said.
>
> Insurers are struggling to lure new members to boost earnings without letting medical costs outstrip premiums. *Humana's price cuts attracted sicker than expected members into its Medicare plans, the company said today.* In WellPoint's case, members of employer-sponsored plans are rushing to get elective care in the face of a declining economy, analysts said.

*"Humana priced their drug plan too low in order to gain market share, and we're seeing the result of that today,"* said Sheryl Skolnick, a CRT Capital Group analyst in Stamford, Connecticut, in a telephone interview. *"They are offering a plan with zero co-pays for a 90-day supply of generics through RightSource, their mail-order. And when you tell seniors something is free, they keep coming back again and again."* [Emphasis added.]

22.     On this news, the Company's shares fell $6.50 per share, or 13.72 percent, to close on March 12, 2008 at $40.88 per share, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased Humana's securities between February 4, 2008 and March 11, 2008, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Humana's securities were actively traded on the New York Stock Exchange ("NYSE").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Humana or, its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of

federal law that is complained of herein.

26.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

       (a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

       (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Humana; and

       (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

29.     The market for Humana's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements, and failures to disclose, Humana's securities traded at artificially inflated prices during the Class Period.

Plaintiff and other members of the Class purchased or otherwise acquired Humana's securities relying upon the integrity of the market price of Humana's securities and market information relating to Humana, and have been damaged thereby.

30.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Humana's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

31.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Humana's financial well-being and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Humana and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

32.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33.     During the Class Period, Plaintiff and the Class purchased Humana's securities at artificially inflated prices and were damaged thereby.  The price of Humana's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Humana, their control over, and/or receipt and/or modification of Humana's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Humana, participated in the fraudulent scheme alleged herein.

35.     Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, Company insiders sold 3,073 shares of the Company's stock for gross proceeds of $213,079.  This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| February 25, 2008 | Pellegrino, Kathleen | 780 | $69.34 | $54,085 |

| February 25, 2008 | McCulley, Steven E. | 779 | $69.34 | $54,015 |
|---|---|---|---|---|
| February 25, 2008 | Liston, Thomas J. | 926 | $69.34 | $64,208 |
| February 25, 2008 | Margulis, Heidi S. | 588 | $69.34 | $40,771 |
| | **TOTAL:** | **3,073** | | **$213,079** |

### Applicability of Presumption of Reliance:
### Fraud On The Market Doctrine

36.     At all relevant times, the market for Humana's securities was an efficient market for the following reasons, among others:

   (a)     Humana's securities met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

   (b)     As a regulated issuer, Humana filed periodic public reports with the SEC and the NYSE;

   (c)     Humana regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

   (d)     Humana was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

37.    As a result of the foregoing, the market for Humana's securities promptly digested current information regarding Humana from all publicly-available sources and reflected such information in the price of Humana's securities.  Under these circumstances, all purchasers of Humana's securities during the Class Period suffered similar injury through their purchase of Humana's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

38.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Humana who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

39.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.    During the Class Period, defendants carried out a plan, scheme and course of

conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Humana's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

41.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Humana's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

42.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Humana's financial well-being and prospects, as specified herein.

43.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Humana's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Humana and its business operations and future prospects in light of the circumstances under which they were made, not misleading,

as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Humana's securities during the Class Period.

44.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

45.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Humana's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the

misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

46.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Humana's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Humana's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Humana's securities during the Class Period at artificially high prices and were damaged thereby.

47.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Humana was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Humana securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

48.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Humana within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

53.     As set forth above, Humana and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their

positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

      **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)      Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

**(d)**      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  April 8, 2008                Respectfully submitted,

                       /s/ *Rebecca Grady Jennings*
                       Charles G. Middleton, III
                       James E. Milliman
                       Rebecca Grady Jennings
                       **MIDDLETON REUTLINGER**
                       2600 Brown & Williamson Tower
                       401 S. 4th Street
                       Louisville, Kentucky 40202
                       502.584.1135  (Firm)
                       502.561.0442  (Facsimile)
                       **Attorneys for Plaintiff**

**Of Counsel :**

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Richard A. Maniskas
rmaniskas@sbtklaw.com
D. Seamus Kaskela
skaskela@sbtklaw.com
David M. Promisloff
dpromisloff@sbtklaw.com
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706 (Firm)
(610) 667-7056 (Facsimile)

Motions for Admission Pro Hac of said attorneys are to be filed promptly hereafter.